UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JEFFREY VINYARD, | ) | |
|---|---|---|
| | ) | Case No. 3:25-cv-373 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Debra C. Poplin |
| CO HARGROVE, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Jeffrey Vinyard, a State prisoner incarcerated at the Morgan County Correctional Complex ("MCCX"), filed a complaint under 42 U.S.C. § 1983 (Doc. 2) and two motions for leave to proceed *in forma pauperis* (Docs. 1, 6). For the reasons set forth below, the Court will **GRANT** Plaintiff's latest-filed motion to proceed *in forma pauperis*, **DENY** his initial motion as moot, **PERMIT** Plaintiff's use-of-force claim to proceed against Defendants Hargrove and Houseman in their respective individual capacities, and **DISMISS** the remaining claims and Defendant.

**I.    MOTIONS TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's latest-filed motion (Doc. 6) demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion (*id.*) will be **GRANTED**, and Plaintiff's initial motion to proceed *in forma pauperis* (Doc. 1) will be **DENIED** as moot.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee, 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the PLRA's requirements for payment of the filing fee.

## II.     SCREENING OF COMPLAINT

### A.     Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

B. **Plaintiff's Allegations**

Sometime between 8:30 and 10:00 a.m. on November 1, 2024, "cert[1]" members Carroll, Hargrove, and Houseman entered Plaintiff's pod at the MCCX to conduct cell searches (Doc. 2, at 6). As Hargrove exited a cell, he looked at Plaintiff standing in the pod, pointed a stick at him, and said, "[Y]ou look high[,] let's search you" (*id.*). Plaintiff walked to his cell, and Hargrove and Houseman searched Plaintiff while Carroll stood at the cell door "as a watch" (*id.*). Plaintiff took his shirt off and "tossed it" to Hargrove, which prompted Hargrove to tell Plaintiff he would beat him if he ever threw "anything at him again" (*id.*). Plaintiff asked Hargrove "why he was being so disrespectful" (*id.*). Hargrove told Plaintiff to "shut the f**k up[,]" grabbed Plaintiff's face, and "tried to ram [his] head into the wall" (*id.*). Plaintiff's head hit the bunk, and Plaintiff pushed Hargrove's hand off his face (*id.*). Houseman struck Plaintiff in the eye with his fist, "bursting [Plaintiff's] eye" (*id.*). Afraid, Plaintiff "grabbed the nearest person and it was Hargrove" (*id.*). Another inmate opened the door to Plaintiff's cell to ask what was happening, and Carroll told "him to get his b***h a** off the door before he gets tased" (*id.*). Hargrove and

---

[1] Based on experience, the Court assumes without deciding that "CERT" is an acronym for "Correctional Emergency Response Team."

Houseman "snatched" Plaintiff, slammed him on his face, and Houseman handcuffed Plaintiff (*id.*). Plaintiff's jaw and several of his teeth were broken during the incident (*id.*).

Houseman transported Plaintiff "to intake[,] where [he] was x-rayed and then sent to the University of Tennessee emergency room" (*id.*). Plaintiff "was later admitted into the hospital to have surgery on [his] jaw" (*id.*).

Aggrieved, Plaintiff filed this action against Defendants Hargrove, Houseman, and Carroll in both their official and individual capacities (*id.* at 2–3), seeking monetary damages and injunctive relief (*id.* at 7).

    C.    **Analysis**

        1.    **Official-Capacity Claims**

The TDOC is an arm of the State of Tennessee, and thus, suit against Defendants in their respective official capacities is suit against the State itself. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). But Plaintiff may not maintain suit against a State or its employees in their official capacities because "a state is not a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

Additionally, the Eleventh Amendment typically "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). As there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against Defendants in their official capacities are

otherwise barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513–14 (6th Cir. 2021) (holding state officials sued in official capacity immune from suit under doctrine of sovereign immunity absent consent). Therefore, the Court will **DISMISS** all official-capacity claims against Defendants.

### 2. Individual-Capacity Claims

Plaintiff maintains that Defendants' conduct violated his Eighth Amendment rights (Doc. 2, at 5). The Eighth Amendment, applicable to the States through the Fourteenth Amendment, provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; *see also Robinson v. California*, 370 U.S. 660, 666–67 (1962). Liberally construing Plaintiff's complaint, the Court considers whether Plaintiff has stated an excessive-force claim and/or a failure-to-protect claim under the Eighth Amendment. In doing so, the Court keeps in mind that to state a claim against any Defendant individually, Plaintiff must adequately plead that each Defendant's own actions have violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

In considering whether a use of force violates the Eighth Amendment's prohibition against cruel and unusual punishment, courts apply a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e., the subjective component; and (2) whether the conduct,

5

in context, is sufficiently serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

Here, Plaintiff describes an encounter in which he threw something at an officer, verbally confronted the officer for perceived disrespect, pushed an officer's hand away when the officer attempted to take physical control of Plaintiff, and then "grabbed" an officer in the midst of the physical altercation that ensued (Doc. 2, at 6). It is reasonable to assume that the use of some force in such circumstances was "applied in a good faith effort to maintain or restore discipline[.]" *Hudson*, 503 U.S. at 6. However, Plaintiff also alleges that Defendants Hargrove and Houseman thereafter slammed him to the ground hard enough to break his jaw and several of his teeth—i.e., plausibly "maliciously and sadistically for the very purpose of causing harm." *Id.*; (Doc. 2, at 6). Therefore, at this stage of the litigation, the Court finds Plaintiff's allegations of excessive force against these two Defendants plausible, and it will permit an individual-liability claim of excessive force to proceed against Defendants Hargrove and Houseman.

However, Plaintiff does not allege that Defendant Carroll used any force against him. Therefore, any excessive force claim against this Defendant will be dismissed.[2] And to hold Defendant Carroll liable for failing to intervene during Hargrove and Houseman's alleged use of force, Plaintiff must show that: (1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and fail[ed] to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and quotations

---

[2] Defendant Carroll's instruction to another inmate to "get his b***h a** off the door before he gets tased" does not otherwise implicate Plaintiff's constitutional rights because there is no constitutional right not to be cursed at or threatened. *See, e.g., Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). And, even if there were such a right, Plaintiff cannot litigate the rights of others. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989).

6

omitted) (alteration in original).  Negligence or dereliction of duty cannot be the basis of a failure-to-protect claim.  *See Daniels v. Williams*, 474 U.S. 327 (1986) (holding negligence does not state §1983 cause of action).

Plaintiff has not pled any facts to suggest that the use of force that resulted in his injuries was protracted, or that Defendant Carroll had the time and ability to intervene and prevent harm to Plaintiff but failed to do so.  Accordingly, the Court will dismiss any failure-to-protect claim against Defendant Carroll.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's latest-filed motion for leave to proceed *in forma pauperis* (Doc. 6) is **GRANTED**, and his initial motion (Doc. 1) is **DENIED** as moot;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Plaintiff's use-of-force claim will **PROCEED** against Defendants Hargrove and Houseman in their individual capacities;

6. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Hargrove and Houseman;

7. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty-one (21) days of entry of this Order;

8. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

9. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action will be dismissed;

10. Defendants shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the complaint, it may result in entry of judgment by default against that Defendant;

11. All other claims and Defendants are **DISMISSED**; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**